FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND** 2015 JAN 21  PM 3: 39

CLERK'S OFFICE
AT BALTIMORE

| | | |
|---|---|---|
| J. B., JR. | | |
| *a minor child* | * | BY_____DEPUTY |
| LAURA BOUMA | | |
| *on behalf of son J.B., Jr.* | * | |
| | | |
| Plaintiffs | * | |
| | | |
| v | * | Civil Action No. ELH-14-3752 |
| | | |
| THE COUNTY OF HOWARD | * | |
| IN MARYLAND, | | |
| JUDGE TIMOTHY McCRONE, | * | |
| JUDGE LENORE GELFMAN, | | |
| JUDGE LOUIS BECKER, | ·* | |
| JUDGE WILLIAM TUCKER, | | |
| ALISA CUMMINS, ESQ., | * | |
| And CHRISTOPHER RAND, ESQ. | | |
| | * | |
| Defendants | | |

\*\*\*

**MEMORANDUM**

This Memorandum addresses the "Motion To Reconsider And Amend Complaint Motion To Vacate Order of December 8, 2014 Motion For Recusal" (ECF 7, the "Motion" or "Motion to Reconsider"), filed on December 15, 2014, by the self-represented plaintiffs, Laura Bouma and Laura Bouma on behalf of her minor son, J.B. Jr. At the time suit was filed, J.B., Jr. was eleven years of age. ECF 1, ¶ 17.

This federal action is rooted in hotly contested divorce and child custody proceedings litigated in the Circuit Court for Howard County, Maryland. Plaintiffs filed suit in this Court under 42 U.S.C. § 1983 against four state judges and two lawyers involved in her domestic case. *See* ECF 1. For reasons set forth in my Memorandum and Order of December 8, 2014 (ECF 4, 5), I dismissed the federal case, *sua sponte*.

Bouma now asks this Court to reconsider the dismissal of her suit. She also complains that this Court improperly provided a named defendant with a copy of the Complaint after the Court dismissed the case and sealed the pleadings. In addition, plaintiff seeks to amend her Complaint, *inter alia*, to exclude the full name of her minor son. Finally, plaintiff seeks my recusal. For the reasons that follow, the Motion shall be denied.

## I.   Factual Background

On December 1, 2014, plaintiffs filed suit under 42 U.S.C. § 1983, alleging violations of various constitutional rights in connection with divorce and child custody proceedings litigated in the Circuit Court for Howard County, Maryland. In particular, plaintiffs alleged violations of the First, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution, allegedly committed by four Maryland State judges and two Maryland attorneys who have been involved in the domestic litigation. The Maryland judges named as defendants are Timothy McCrone; Lenore Gelfman; Louis Becker, III; and William Tucker. The attorneys named as defendants are Alisa Cummins[1] and Christopher Rand. Cummins was the child's "Best Interest Attorney" ("BIA")[2] and Rand represented Mr. Bouma, the husband/father. *See* ECF 1, ¶¶ 14, 21. In addition, plaintiffs sued "the County of Howard, in Maryland." Plaintiffs

---

[1] Plaintiffs use the spelling of "Alisa" in the caption but in the body of the Complaint they use the spelling of "Alisia." *See, e.g.*, ECF 1, ¶¶ 14, 28.

[2] Under Md. Code (2012 Repl. Vol.), § 1-202(a)(11)(ii) of the Family Law Article ("F.L."), a court may appoint a lawyer to serve as a "best interest attorney" to represent the minor child in a contested case as to custody, visitation, or support. *See McAllister v. McAllister*, 218 Md. App. 386, 402-04, 97 A.3d 227, 236-37 (2014). The BIA provides an independent assessment of what is in the child's best interest. *See Taylor v. Mandel*, 402 Md. 109, 132, 935 A.2d 671, 684 (2007). This is in contrast to a "child advocate attorney" under F.L. § 1-202(a)(1)(i). The child advocate attorney conveys and advocates the wishes of the child to the court, without regard to what might be in the child's best interest. *McAllister*, 218 Md. App. at 403 n.7, 97 A.3d at 237 n.7. A BIA attorney appointed under F.L. § 1-202 does not act as an arm of the court and thus has no immunity from legal malpractice suits. *Fox v. Willis*, 390 Md. 620, 634, 890 A.2d 726, 734 (2006).

attached sixteen exhibits to the Complaint, all of which were filed on the public docket. Many

contained personal identifying information pertaining to the minor child, J.B., Jr., as well as

medical/psychological information about the child.

At the time suit was filed, Ms. Bouma submitted a handwritten request asking the Court

to "review [the matter] as soon as possible because the numerous civil violations had caused this

child to be at extreme risk for imminent harm." ECF 3.   As a result of that request, I

immediately prioritized my review of the lawsuit.  In doing so, it became patently clear that the

federal suit is predicated on plaintiffs' profound dissatisfaction with rulings made in the Circuit

Court for Howard County in regard to the divorce and custody proceedings.

The following paragraphs from plaintiffs' federal suit (ECF 1) are illustrative, among

others:

> 22.  Under Maryland state law a petitioner for divorce must be separated for 12
> months before a divorce petition can legally be filed.  No exceptions apply.
> Normally, the divorce proceedings would have been field in the County where the
> marital residence is located, Queen Ann [sic] County (Exhibit 3).

> 23.  Father [name omitted] filed for divorce as a matter of record only eight
> months after the point of separation based on his sworn testimony.   The
> circumvention of the 12 month rule was dismissed in Howard County.  It is also a
> matter of record that the Petitioner's Father, Defendant Christopher Rand's client,
> left the marital residence located in Queen Ann [sic] County to live with his
> parents where he was "connected "in Howard County.  [sic as to quotation
> marks.]  Father grew up in Howard County where generations of his relatives
> have lived (14th Amendment – failure to provide equal protection under the law).

> *   *   *

> 26.   Consistently, Plaintiffs['] legitimate attempts to present evidence and
> introduce witnesses were unscrupulously denied or suppressed.  The Howard
> County Circuit Court, beginning with the Defendant, Judge Timothy McCrone,
> and followed by Judge Louis a [sic] Becker, Judge Lenora [sic] Gelfman and
> concluding with the Judge William Tucker, conducted themselves in a manner
> more akin to a syndicate then [sic] a tribunal in the quest of truth and justice.

27.   In the initial hearing Judge Timothy McCrone elected to shape rather than hear the evidence. He refused to allow the presentation of evidence and witness testimony to enter the record. Treatment of the herein Plaintiffs over the months and years that followed have been more akin to the southern lawlessness that inspired the civil rights act of 1871.

28.   After the Hon. Timothy McCrone, for reasons that are still unclear issued his, by all measure extreme and excessive order of April 12, 2012. All further litigation presided over by members of the Howard County Circuit Court Bench was delivered in a manner that precluded Plaintiffs' right to due process. So as not to expose the faults in Judge McCrone's decision the Howard County Bench "circled the wagons" to protect one of their own, and subsequently placed a child at risk. All opportunities to expose the faults in Judge Timothy McCrone's initial order and subsequent impact on Plaintiff Child were deliberately suppressed or sealed by the Court and interlopers, Defendants Christopher Rand and Alisia Cummins.

*   *   *

31.   On February 4, 2014, Circuit Court Judge Gelfman, "superseded" (Exhibit 4 supersede Order) the TPO of February 3, 2014 properly issued by a District Judge only a day earlier. In an extraordinary demonstration of cronyism and gamesmanship, the Defendant Judge Gelfman made no effort to review the evidence presented by the Plaintiff's Motion just one day earlier but allowed Father and his counsel to manipulate the system. Father and his Counsel, Defendant Rand, misused the filing of a temporary protective order as a vehicle to engage in exparte' [sic] communications so as to color the perception of the Court. . .

In addition, plaintiffs alleged that Judge McCrone engaged in "extreme and severe treatment" of Ms. Bouma, ECF 1, ¶ 10; Mr. Rand "orchestrated and manipulated" the court through "frivolous filings, ex parte communications ... and false statements to the court that unnecessarily caused the plaintiffs excruciating pain and anguish," *id.* ¶ 13; Ms. Cummins "stepped well outside the bounds of her area of authority and protections afforded as an arm of the court," *id.* ¶14; Judge Becker "ordered a continuance which resulted in further postponing of the presentation of evidence associated with a Temporary Restraining Order," *id.* ¶ 15; Judge Gelfman improperly "supersede[d]" a "Temporary Protective Order" issued by another judge one day earlier, *id.* ¶ 11; and Judge Tucker violated plaintiffs' rights to due process by failing "to

4

review evidence substantiating abuse at the TPO hearing on February 11, 2014" and later on July 25, 2014. *Id.* ¶ 16.

Based on these and other allegations, this Court, *sua sponte*, issued a Memorandum (ECF 4) and Order (ECF 5) on December 8, 2014, dismissing the case, based on a lack of subject matter jurisdiction and/or on grounds of abstention. At the time, the defendants had not yet been served. Nevertheless, the Court directed the Clerk to send a copy of its Order to all of the named parties. *See* ECF 5.

Moreover, because the suit involved a minor child, the Court, in the interest of protecting the privacy of the child, placed its Memorandum and Opinion under seal. *See* ECF 4 at 1 n.1; Fed. R. Civ. P. 5.2(a). Indeed, the entire matter was docketed with restricted access.

As a result of receipt of the Order (ECF 5), Ms. Cummins, one of the named defendants, apparently tried to gain access to the suit in which she was named, by way of this Court's electronic filing system. But, she could not do so because of the restricted access to the public. As a result, Ms. Cummins contacted my Chambers on December 9, 2014, to request a copy of the lawsuit in which she was named as a defendant.[3]  In response, I issued an Order on the same date, to permit the Clerk to mail a copy of the lawsuit to Ms. Cummins. *See* ECF 6.[4]

## II. Discussion

### A. Disclosure of the Complaint

As indicated, Ms. Bouma filed a suit that publicly disclosed personal and confidential information about her minor son. This included the child's full name, date of birth, and medical

---

[3] It is hardly uncommon for lawyers and self-represented litigants to contact Chambers with questions. As the Order indicates (ECF 6), I never spoke directly to Ms. Cummins. Rather, she spoke to a law clerk.

[4] Of course, if Ms. Bouma had pursued her litigation, she would have had to serve this same Complaint on the litigants, including Ms. Cummins.

information. Out of concern for the privacy rights of the child, and pursuant to Fed. R. Civ. P. 5.2(a), I sealed the case, *sua sponte*. Ms. Bouma now attempts to utilize the Court's decision to protect her child as grounds to complain that information she never sought to protect has been disclosed to a person she sued in this case.

Because the Complaint was sealed and the case was dismissed before service of process was achieved, Ms. Bouma maintains that the Court had no right to allow disclosure of the Complaint to Ms. Cummins, one of the defendants named in the suit. She contends that the Court improperly "granted access selectively to a third-party" and, in doing so, denied plaintiffs equal protection under the law. ECF 7 at 5. This contention lacks merit.

As recounted, sealing was appropriate for the reasons stated. But, in releasing a copy of the suit to Ms. Cummins, the Court was mindful of her right to know that she had been sued. Analogy to the public's common law right to inspect and copy judicial records and documents provides some guidance. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).

The common law presumes that the public (including the press) have a qualified right to inspect and copy all judicial records and documents. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014); *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("[H]istorically both civil and criminal trials have been presumptively open."). The common law presumptive right of access can be abrogated in "unusual circumstances," where "countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *see Doe*, 749 F.3d at 265-66; *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009).

6

The common law right of access is buttressed by a "more rigorous" right of access provided by the First Amendment, which applies to a more narrow class of documents, but is more demanding of public disclosure. *Rushford*, 846 F.2d at 253. The right extends, for example, to a judicial ruling on a summary judgment motion. *Doe,* 749 F.3d at 267.

If a court record is subject to the First Amendment right of public access, the record may be sealed "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone v. University of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). "When presented with a sealing request, our right-of-access jurisprudence requires that a district court first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'" *Doe,* 749 F.3d at 266 (quoting *Stone*, 855 F.2d at 181).

Notably, "sensitive medical or personal identification information may be sealed," but not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011). And, Local Rule 105.11 requires a party seeking to seal documents to provide the court with "reasons supported by specific factual representations to justify the sealing" and "an explanation why alternatives to sealing would not provide sufficient protection."

Cummins, the party who requested a copy of the Complaint in which she was sued, was not an "interloper," as Ms. Bouma would have it. Rather, Cummins is the minor child's "best interest attorney" and she was sued by Ms. Bouma under 42 U.S.C. § 1983. In my view, Cummins had a significant interest in obtaining a copy of the suit in which she was named as a defendant. Given that Ms. Bouma never sought sealing in the first place, it is not clear why she would complain about this Court's authorization of disclosure of the suit to a party named in the

7

suit.   At the very least, disclosure of the suit to a named defendant is a narrowly drawn accommodation to the public's right to know.

At this juncture, however, and given the many considerations that apply to sealing of an entire case, I do not believe it is necessary or appropriate to seal this entire case.  For the reasons previously stated, sealing of the entire case is too broad.  Therefore, ECF 1 (the Complaint) and the exhibits attached to it shall remain sealed.  ECF 4 (this Court's Memorandum of December 8, 2014) and ECF 7-1 (which is a copy of ECF 4) shall also remain sealed.  However, I will file a redacted version of ECF 4 to place on the public docket.  And, because this Memorandum does not contain personal identifying information or disclose confidential information about the child, sealing of it is unwarranted.

### B.  Request to Reconsider/Vacate

Fed. R. Civ. P. 59(e) is captioned "Motion to Alter or Amend a Judgment."  It states:  "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

Fed. R. Civ. P. 60(b) permits a party to file a motion to "relieve [the] party . . . from a final judgment" on a variety of grounds.  *Liljeberg v. Heath Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (noting that 28 U.S.C. § 455 "does not, on its own, authorize the reopening of closed litigation" but that Rule 60(b) "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment.").[5]

---

[5] In particular, Rule 60(b) allows a party to obtain relief from a final judgment based on:

(1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged;

The Federal Rules of Civil Procedure do not contain an express provision for a "motion for reconsideration" of a final judgment. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 115 (2011). But, the Fourth Circuit has said that "a motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no later than [28] days after entry of the adverse judgment and seeks to correct that judgment." *Robinson v. Wix Filtration Corp.* LLC, 599 F.3d 403, 412 (4th Cir. 2010) (citing *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996)). Because the Motion (ECF 7) was filed within 28 days of my ruling, I shall analyze the motion under Rule 59(e).

Although the federal rules do not specify a standard for granting a Rule 59(e) motion, the Fourth Circuit has "recognized that there are three grounds for amending an earlier judgment [under Rule 59(e)]: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d, 396 403 (4th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999); *see Robinson*, 599 F.3d at 411; *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007); *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006).

The purpose of Rule 59(e) is to "permit a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pacific Ins. Co.*, 148 F.3d at 403 (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). Accordingly, the Fourth Circuit has cautioned that a party may not use a Rule 59(e) motion to "raise arguments which could have been raised prior to the issuance of the judgment," or to "argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id. See also Nat'l Ecol. Found. v. Alexander*, 496 F.3d 466, 477

---

it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

(6th Cir. 2007) ("Rule 59(e) motions are 'aimed at reconsideration, not initial consideration.'") (citation omitted). With respect to the "clear error or manifest injustice" standard, a "factually supported and legally justified" decision does not constitute clear error. *Hutchinson*, 994 F.2d at 1081–82.

Moreover, "[m]ere disagreement [with a court's ruling] does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993); *see United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002), *cert. denied*, 538 U.S. 1012 (2003). Indeed, "'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pacific Ins. Co.*, 148 F.3d at 403 (citation omitted).

Ms. Bouma's motion to reconsider fails to assert a viable basis for a change in the Memorandum and Order (ECF 4, 5) issued in this case. She simply presents her view that the Court erred in concluding that it lacked subject matter jurisdiction or, alternatively, in deciding to abstain.

To support her position, Bouma cites various federal statutes that have no applicability to the claims asserted in her Complaint. Nor do these statutes establish subject matter jurisdiction. For example, Bouma points to provisions such as the Bradley Amendment to Title IV-D of 42 U.S.C. §666(a)(9), which "directed states to enact laws that prohibit reductions of child support arrearage stemming from a court order." ECF 7 at 3. She then posits the query: "If the custodial parent absconded with the child, and arrears are based on the parent's disappearance . . . a federal court cannot hear the case?" *Id.* (ellipses in original). In another example, Bouma cites the "Child Support Recovery Act of 1992," which she states made it a federal crime to willfully fail to pay a past-due support obligation to a child who resides in another state. Bouma asks, "what

if the custodial parent abducted the child to another state and remained hidden . . . a federal court cannot hear the matter against the custodial parent?" *Id.* (ellipses in original).

None of the provisions cited by Ms. Bouma apply to the facts asserted in the Complaint. Ms. Bouma presents questions regarding federal jurisdiction as to hypothetical claims not currently before the Court. Under Article III of the United States Constitution, however, this Court is not permitted to issue advisory opinions. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

Ms. Bouma's disagreement with this Court's rulings does not support the requested relief. In any event, as discussed below, the Court remains persuaded that it ruled correctly.

Federal district courts are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattach Servs., Inc.*, 545 U.S. 546, 552 (2005); *United States ex rel. Voyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). "They possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *Jadhav*, 555 F.3d at 347 (citing *Bowles v. Russell*, 551 U.S. 205 (2007)).

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). "[J]urisdiction goes to the very power of the court to act." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). Moreover, a district court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Of import here, "[s]ubject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court *sua sponte*, at any time prior to final judgment." *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010). And, pursuant to Fed. R. Civ. P. 12(h)(3), "the court must dismiss the action" if and when it determines that the

court lacks subject matter jurisdiction. *See also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).[6]

In my Memorandum of December 8, 2014 (ECF 4), I set forth my reasons to support the conclusion that this Court lacks subject jurisdiction. I said, in part, at page 3:

> Of import here, this is not an international child custody case, governed by federal statute or a treaty. Nor does this case involve diversity of citizenship. *See* 28 U.S.C. § 1332. As difficult as this matter is for Ms. Bouma, it springs from a conventional State custody dispute in which she has not met with success. Domestic relations cases, including child custody matters, are generally not heard in federal court, precisely because "State courts . . . have the experience to deal with this specific area of the law."[] *Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006) (noting that "federal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters") (citing *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980)). Even when there is diversity of citizenship, "diversity jurisdiction does not include power to grant divorces, determine alimony or support obligations, or determine child custody rights." *Wasserman v. Wasserman*, 671 F.2d 832 (4th Cir. 1982); *see Raftery v. Scott*, 756 F.2d 335, 343 (4th Cir. 1985) (discussing domestic relations exception to federal courts' diversity jurisdiction).

Further, at page 4, I discussed the *Rooker-Feldman* doctrine, which derives from the two leading Supreme Court cases in which it has been articulated and applied: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). I said, *id.*:

> Alternatively, the *Rooker-Feldman* doctrine warrants abstention in this case.[] The *Rooker-Feldman* doctrine is a jurisdictional rule that prohibits a federal district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In other words, the doctrine forbids claims that seek redress for an injury caused by a state-court decision, because such a claim

---

[6] The court also has the inherent power to dismiss, *sua-sponte*, frivolous or malicious actions and motions. *See Ross v. Baron,* 493 F. App'x 405, 406 (4th Cir. 2012) (per curiam) (citations omitted); *cf. Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 308 (1989); Fed. R. Civ. P. 12(f) ("The court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own . . . .").

essentially asks "'the federal district court to conduct an appellate review of the state-court decision.'" *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.* 434 F.3d 712, 719 (4th Cir. 2006)), *cert. denied,* 551 U.S. 1130 (2007).

The doctrine derives from 28 U.S.C. § 1257, a federal statute that vests the United States Supreme Court–and only the United States Supreme Court–with jurisdiction to hear appeals from state court decisions in cases raising questions of federal law. *See Adkins*, 464 F.3d at 463-64. The *Rooker-Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

Deciding the issues presented by plaintiff's Complaint would require this Court to reconsider or review various state-court decisions. Accordingly, the *Rooker-Feldman* abstention doctrine is applicable.

In addition to what I stated previously, other grounds lead me to the same result.

In her Prayer for Relief, plaintiff requested, among other things, "a judgment declaring that the defendant's [sic] actions are in violation of Plaintiff's [sic] constitutional rights." ECF 1 at 18 (Wherefore Clause, ¶ 1). In effect, plaintiff sought, at least in part, a declaratory judgment with respect to parallel State proceedings.

"The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and . . . declaratory relief may be available even though an injunction is not." *Green v. Mansour*, 474 U.S. 64, 72 (1985) (citation omitted). "But . . . the declaratory judgment statute is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* (citation and internal quotation marks omitted). "The propriety of issuing a declaratory judgment may depend upon equitable considerations . . . and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (citations and internal quotation marks omitted).

13

With respect to the principles governing declaratory judgment actions, the Fourth Circuit has said: "[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004); *see also Senior Execs. Ass'n v. United States,* AW-12-02297, 2013 WL 1316333, at *21 (D. Md. Mar. 27, 2013).

To determine whether to proceed with a federal declaratory judgment action when a parallel state court action is pending, the Fourth Circuit has focused on four factors: "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping." *Great Am. Ins. Co. v. Gross,* 468 F.3d 199, 211 (4th Cir. 2006). "This less demanding standard reflects the distinct features of the Declaratory Judgment Act and the greater discretion afforded federal courts in declaratory judgment actions." *AMEX Assur. Co. v. Giordano*, 925 F. Supp. 2d 733, 744 (D. Md. 2013) (citation omitted).

In my view, all of the factors are pertinent here, with particular emphasis on the third and fourth factors. This case is an obvious attempt at forum shopping, involves overlapping issues of

14

fact with the domestic case in State court, and would create unnecessary entanglement between the State and federal courts.

As noted, four of the defendants are Maryland State judges who have been involved in various aspects of plaintiffs' domestic case. "[A] general principle of the highest importance to the proper administration of justice [is] that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (second alteration in original) (citation and internal quotation marks omitted). Therefore, "judges of courts of superior or general jurisdiction are not liable [in damages] for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 355-56 (citation and internal quotation marks omitted).

To be sure, judicial immunity is not absolute. Indeed, judicial immunity does not protect judges from injunctive or declaratory relief for acts taken in a judicial capacity. *See Pulliam v. Allen,* 466 U.S. 522, 541 (1984) (holding that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"); *see also Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (citing *Pulliam* for the proposition that state judges may be liable for injunctive and declaratory relief under § 1983); *Allen v. Burke,* 690 F.2d 376, 378 (4th Cir. 1982) (holding, pre-*Pulliam*, that "judicial immunity does not extend to injunctive and declaratory relief under 42 U.S.C. § 1983").

However, "a litigant can prevail in a declaratory or injunctive relief action against a judge acting in his or her judicial capacity only in circumscribed circumstances. One limiting principle is that injunctions are an improper remedy where there 'is no claimed continuing violation of federal law. . . .'" *Mathis v. Martin,* AW-13-02597, 2013 WL 5609134, at \*4 (D. Md. Oct. 11,

15

2013) (quoting *Green v. Mansour*, 474 U.S. 64, 73 (1985)). Judge Williams observed in *Mathis*, *supra*, 2013 WL 5609134, at *4: "This principle conforms to *Pulliam's* precise holding that 'judicial immunity is not a bar to **prospective** injunctive relief against a judicial officer acting in her judicial capacity.'" (quoting *Pulliam*, 466 U.S. at 541-42) (emphasis added in *Mathis*). Of import here, however, the Fourth Circuit has declared that "no federal court may issue a declaratory judgment on past state action, where the action complained of is past and no other relief [i.e., injunctive relief] is available." *Int'l Coal. for Religious Freedom v. Maryland*, 3 F. App'x 46, 50 (4th Cir. 2001) (alteration in original) (citing *Green*, 474 U.S. at 74).

Moreover, declaratory or injunctive relief is rarely available when, as here, "the litigant is using the federal action to relitigate the state court judge's rulings. In this vein, the United States Supreme Court has generally held that federal district courts lack jurisdiction 'over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" *Mathis*, 2013 WL 5609134, at * 4 (quoting *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983)). Rather, the "proper method of challenging rulings or actions by the state court is . . . by appeal within the state system, and ultimately by petition to the United States Supreme Court." *Shrader v. State Sup. Ct. for W. Va. Through Each of the Five Justices*, 811 F.2d 1505 at *1 (4th Cir. Feb. 5, 1987) (unpub.) (per curiam) (citing *Feldman*, 460 U.S. at 486).

Applying these principles, plaintiffs' claims against the four State judges are patently frivolous. A review of the federal Complaint reveals that, at its core, plaintiff is a disgruntled litigant who seeks to relitigate her State divorce and custody case in this forum, repackaged as claims of constitutional violations. The operative facts of the State and federal actions are nearly identical. And, plaintiffs could have challenged the court's rulings by way of an appeal. *See,*

*e.g.,* Md. Code (2013 Repl. Vol.), Cts. & Jud. Proc. Art. ("C.J."), § 12-303(3)(i) (generally authorizing interlocutory appeal from order granting or dissolving an injunction); C.J. § 12-303(x) (authorizing interlocutory appeal from an order depriving a parent of the care and custody of his child, or changing the terms of such an order); C.J. § 12-301 (authorizing appeal from a final judgment entered by a circuit court). *See also Evans v. State,* 396 Md. 256, 327, 914 A.2d 25, 67 (Md. 2006) ("Because a temporary restraining order is in the nature of an injunction, such an appeal, though from an interlocutory order, is permitted under [C.J. § 12-303(3)].").

What Judge Williams said in *Mathis, supra,* is apt here: "[T]he Fourth Circuit has decreed that injunctive and declaratory relief are improper remedies against judicial officers where the record demonstrates that the plaintiff 'is simply dissatisfied' with the judge's rulings." (quoting *Wilkins v. Rogers,* 581 F.2d 399, 405 (4th Cir. 1978)). The immunity principles governing official-capacity suits against judges compelled dismissal of plaintiffs' claims against the judges. Accordingly, as to the suit against the four Maryland judges, I stand by my decision to dismiss the suit.

The case fares no better as to the two attorneys. At its core, a § 1983 action is directed to unlawful conduct under color of law. *See Owens v. Baltimore City State's Attorney Office,* No. 12-2173, slip op. at 44, 767 F.3d 379 (4th Cir. Sept. 24, 2014).

Section 1983 of 42 U.S.C. provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271

(1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In analyzing a § 1983 claim, a court must first identify "the specific constitutional right allegedly infringed." *Albright,* 510 U.S. at 271.

A § 1983 claim requires "that the alleged deprivation was committed by a person acting under color of state law," *West v. Atkins,* 487 U.S. 42, 48 (1988), that is, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  State action and action under color of law mean the same. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 932 (1982).  One can act under color of law without being an officer of the State. *Id.* at 941.  But, such a person must be "a willful participant in joint activity with the State or its agents. . . ." *Id.* (citation and quotation marks omitted).

None of the allegations indicates a plausible claim that Rand, as counsel for Ms. Bouma's former spouse, or Cummins, the best interest attorney for the child, were acting under color of law.  As to Cummins, the child's BIA, the Maryland Court of Appeals has made clear that, despite the appointment of a BIA pursuant to a State statute, *see* n.2, *supra*, such an attorney does not act as an arm of the court and thus has no immunity from a legal malpractice suit. *Fox v. Willis*, 390 Md. 620, 634, 890 A.2d 726, 734 (2006).

### 3.  Recusal

Plaintiff has also asked the Court to recuse itself from this case.  Plaintiff complains that the Court "granted an ex parte request from Alisa Cummins, a Defendant identified as an interloper in a sealed Federal Complaint." ECF 7 at 5.  Further, she avers that the Court "granted access selectively to a third party . . . ." (ECF 7 at 5) when it issued an Order (ECF 6) directing the Clerk to provide Ms. Cummins with a copy of the Complaint.  According to Ms. Bouma,

18

"For the Court to grant an adversarial third-party access to a federally sealed document is to cast a conspiratorial, complicitous shadow on the Court's motives. . . ." *Id.*   In addition, she complains that Ms. Cummins "engage[d] in unethical ex parte communication with the Court. The Court removed the seal on the file by granting access to Ms. Cummins." ECF 7 at 5.

As discussed, Ms. Bouma misapprehends the purpose of the seal imposed by the Court. The Court took it upon itself to seal the matter to restrict public access to private, personal information about the minor child. This did not bar the Court from releasing a copy of the suit to a named defendant.   Indeed, had Ms. Bouma proceeded with her suit, the parties would, of course, been served with the lawsuit.   Therefore, in the Order of dismissal, I directed the Clerk to provide a copy of the Order to the persons named as defendants in the suit.

Upon receipt of the Order, one of the defendants, Ms. Cummins, contacted the Court's Chambers to state that, because of the restrictions imposed by the Court, she was unable to obtain a copy of the lawsuit in which she was named as a defendant.   The Court had no direct communication with Ms. Cummins, but authorized the Clerk to release a copy of the lawsuit to Ms. Cummins. *See* ECF 6.

In my view, this is hardly grounds for recusal.   At the outset, it is obvious that Ms. Cummins did not contact Chambers *prior* to any ruling by the Court dismissing the case.   Her contact with Chambers, limited as it was, occurred *after* the case was closed.

Under 28 U.S.C. § 144, the party to any proceeding in the district court may seek disqualification of the judge by filing a "timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias . . . in favor of any adverse party . . . ."   The affidavit must be filed "not less than ten days before the . . . proceeding is to be heard, or good

cause shall be shown for failure to file it within such time." This provision is of no aid to Ms. Bouma.

Title 28 of the United States Code § 455 is also pertinent. Section 455(a) of Title 28 focuses on the appearance of impropriety. It states: "Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." The test "embodies an objective standard," and asks "whether an objective, disinterested, lay observer fully informed of the facts ... would entertain a significant doubt about a judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). The provision is intended to promote confidence in the judiciary. *Liljeberg*, 486 U.S. at 865. In my view, no *reasonable* person would question my impartiality in this case based on the issuance of ECF 6.

In sum, Bouma seeks my recusal because she is unhappy with my rulings. That, however, is not a basis for recusal.

### 4. Amendment

Plaintiffs have moved to amend the complaint. They seek, *inter alia*, to remove the name of Bouma's minor son and birth date from the filings. They also seek to substitute the Administrative Office of the Courts for the Circuit Court for Howard County. Because the judgment dismissing the Complaint will remain undisturbed, the motion to amend the Complaint will be denied. A "district court may not grant" a post-judgment motion to amend a complaint "unless the judgment is vacated pursuant to Fed. R. Civ. Proc. 59(e) or 60(b)." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).

In any event, the request is moot because ECF 1 shall remain sealed.

## Conclusion

The Court is of the view that, despite plaintiffs' attempt to couch the federal lawsuit as a § 1983 action, it is nothing more than an attempt to litigate in federal court Ms. Bouma's dissatisfaction with the divorce and custody proceedings litigated in the Circuit Court for Howard County.

The Motion to Reconsider, Vacate, and Recuse is DENIED. The Motion to Amend will be DENIED as moot.

An Order follows.

Date: January 21, 2015

_____/s/_____
Ellen Lipton Hollander
United States District Judge

21